# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**CALAIS REGIONAL HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10486** |
| **CALAIS REGIONAL HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-_____** |

## COMPLAINT

Calais Regional Hospital (the "Debtor" or "CRH"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, complains against the United States Small Business Administration (the "SBA") acting through Jovita Carranza (the "Administrator"), in her capacity as the Administrator of the SBA (the "Administrator"), as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(B), and the District of Maine Local Rule of Civil Procedure 83.6, pursuant to which all cases under title 11 of the United States Code (the "Bankruptcy Code") and all proceedings arising in or related to cases arising under the Bankruptcy Code are automatically referred to this Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding. 28 U.S.C. § 157(b)(2).

4. The Debtor consents to entry of final orders by this Court in this adversary proceeding.

## PARTIES

5. The Debtor is a non-profit Maine business corporation located in Calais, Maine. The Debtor operates a critical access hospital.

6. The Administrator can sue and be sued on behalf of SBA in any court of general jurisdiction. 15 U.S.C. § 634(b).

## GENERAL BACKGROUND

7. On September 17, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code and commenced the above-captioned chapter 11 case now pending before this Court.

8. No trustee has been appointed in the Debtor's chapter 11 case.

9. The Debtor continues to operate its business as a debtor-in-possession.

10. On March 19, 2020, the Debtor filed its Status Report Regarding Potential Case Impact Of Covid-19 And Request For Status Conference (the "Status Report") in its pending chapter 11 case. The Status Report was filed at Docket Entry 301 in Case No. 19-10486. It is incorporated by reference here.

11. A significant portion of the Debtor's revenue is derived from outpatient procedures and non-essential office visits or medical procedures. Following the issuance of recommendations from the federal Centers for Disease Control and the State of Maine, as well as stay-at-home orders issued by the Governor of the State of Maine, non-essential medical procedures and office visits

have been postponed, rescheduled or canceled. These cancellations and deferrals have had—and are expected to continue to have—a negative impact on the Debtor's cash receipts.

12. On or about March 27, 2020, Congress enacted and the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

13. The CARES Act included stimulus funds designed to assist businesses and ensure that American workers continue to be paid despite the economic impact of Covid-19 and social distancing measures.

14. Section 1102 of the CARES Act establishes the Paycheck Protection Program ("PPP") as a convertible loan program under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636. While nominally called a "loan," PPP disbursements are treated as grants—and there are no repayment obligations—if, among other things, 75% of PPP funds are used for payroll and wage expenses.

15. A party can obtain funds under PPP by applying with any federally insured participating lender using an application form created by SBA, and SBA guaranties the loan.

16. On or about April 2, 2020, SBA released forms of applications for PPP. Other than filling out the official form of application, there is no underwriting, and the Administrator is relying upon assistance of commercial lenders acting in concert with SBA to administer PPP.

17. Even though § 1102 of the CARES Act does not prohibit extending funds under PPP to a chapter 11 debtor, the PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy" and then goes on to state that answering "yes" to that question means a request for PPP funds will not be approved.

18. On April 7, 2020, the Debtor submitted an application (the "Application") for PPP funds to its commercial lender, First National Bank. A copy of the Application is attached as

3

**Exhibit A**.

19.  The Debtor sized its request for PPP funds to ensure that the funds would be treated as a grant and be forgivable. To the extent any portion of the funds requested by the Debtor would exceed the amount to be forgiven, the Debtor intends to immediately repay that amount.

20.  By e-mail dated April 23, 2020, First National Bank requested guidance from SBA with respect to processing the Debtor's Application. A copy of this e-mail is included in the document attached as **Exhibit B**.

21.  SBA responded by e-mail dated April 24, 2020, quoting a provision of an interim final rule promulgated that same day (the "April 24 Rule"), and not yet adopted, prohibiting bankruptcy debtors from participating in PPP. A copy of SBA's e-mail is included in **Exhibit B**. A copy of the April 24 Rule is attached as **Exhibit C**.

22.  First National Bank, through its attorney, subsequently sent an e-mail to counsel for the Debtor stating that "[t]he bank has the original application on file and ready to be submitted. The [b]ank is not allowed to knowingly submit an application for a Debtor in bankruptcy. So things are on hold on our end." A copy of First National Bank's e-mail is included in **Exhibit B**.

23.  Upon information and belief, SBA has advised Machias Savings Bank not to process a PPP application for Penobscot Valley Hospital on the basis that PVH's answer of "yes" to question 1 on its PPP application was a self-certification that PVH was ineligible for PPP. A copy of e-mail between SBA and Machias Savings Bank reflecting this discussion is attached hereto as **Exhibit D**. PVH filed this document on the docket in an adversary proceeding it initiated earlier today.

24.  PPP funds are available on a first come, first served basis. The Debtor's Application was not processed, and the Debtor did not receive funds prior to their exhaustion under

the first tranche of PPP funding.

25. Subsequently, on or about April 23, 2020, Congress enacted legislation making additional funds available for PPP.

26. The Debtor is an eligible borrower under PPP and seeks to ensure adequate funds are available under this second tranche of PPP funding once its discrimination claim under § 525(a) of the Bankruptcy Code is resolved and the Debtor's request for PPP funding is processed and the deadline for any and all administrative and judicial remedies has expired.

27. The Debtor understands that First National Bank is willing to advance funds through PPP if the Application (or a subsequently amended application) can be processed and approved as meeting SBA's requirements.

28. The April 24 Rule states that "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." The stated basis for this rule is that the Administrator "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

29. This interim final rule had not been proposed at the time the Debtor submitted its Application. An interim final rule proposed on April 15, 2020 (the "April 15 Rule") stated that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)." The April 15 Rule contained no exclusion for debtors.

30. On April 24, 2020, the Debtor filed revised cash projections (the "Cash Plan") with respect to a request for authority to use property that may be cash collateral. The Cash Plan is filed

at Docket Entry 339 in Case No. 19-10486. The Cash Plan and the related statement at Docket Entry 339 are incorporated by reference herein.

31. The Debtor projects that it will run out of money to pay ongoing expenses by early June if it is unable to obtain funds from PPP or other sources and in the absence of a widespread outbreak of Covid-19 in Washington County. This would result in the Debtor being forced to immediately close its business without sufficient funds for an orderly wind-down. This would cause irreparable harm to the Debtor.

32. The timeline in the prior paragraph could accelerate if there is a widespread outbreak of Covid-19 in the Debtor's service area.

## COUNT I

### (Preliminary and Permanent Injunction)

33. The Debtor incorporates the allegations of each of the prior paragraphs as if set forth fully herein.

34. The Debtor is entitled to seek relief against the Administrator and all those acting in concert with her under Rule 65 of the Federal Rules of Civil Procedure, which is applicable to this action pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

35. There is no prohibition in the CARES Act or under § 7(a) of the Small Business Act prohibiting lending to debtors.

36. Moreover, the CARES Act specifically waives all underwriting considerations under § 7(a) of the Small Business Act.

37. The Debtor is likely to prevail on the merits of its claim for an injunction as well as for declaratory relief.

38. The balance of hardships favors issuance of preliminary injunctive relief. The

inability to obtain PPP funds could cause the Debtor to suffer immediate and irreparable harm by forcing the Debtor to liquidate. Preliminary and permanent injunctive relief while this matter is pending will not harm the Defendant.

39. The Debtor seeks an order enjoining SBA or any commercial lender provided notice of the Court's order, *see* Fed. R. Civ. P. 65(d)(2)(C), from denying an application under PPP on the basis that the applicant is a debtor in bankruptcy and requiring that an application of the Debtor to participate in PPP be considered without the words "or presently involved in any bankruptcy" being considered.

40. Due to the "first come, first served" nature of PPP appropriations, the Debtor further seeks an order enjoining SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Application (or any subsequent application filed shortly hereafter) until the Debtor's claims in this Complaint are resolved.

## COUNT II

**(Declaratory Relief)**

41. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

42. The Debtor is entitled to seek declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

43. Neither the CARES Act nor the Small Business Act prohibit disbursements under PPP to the Debtor based on its status as a debtor under chapter 11 of the Bankruptcy Code.

44. The Debtor has a legal right to apply for funds under PPP and to have its Application (or any amended application) considered on the same terms as other applicants without regard to its status as a debtor under chapter 11 of the Bankruptcy Code.

45. By prohibiting First National Bank from processing the Application, and by prohibiting disbursements to debtors under PPP, the Administrator has exceeded her statutory authority.

46. The Debtor is entitled to a declaratory judgment that the CARES Act requires its Application to be considered on the same terms as other qualified businesses that are not presently debtors in cases arising under the Bankruptcy Code.

## COUNT III

## (11 U.S.C. § 525(a))

47. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

48. Section 525(a) of the Bankruptcy Code prohibits the federal government from discriminating against a person based on that person's status as a debtor with respect to a "license, permit, charter, franchise, or other similar grant[.]"

49. The Debtor is a debtor in a case under chapter 11 of the Bankruptcy Code.

50. PPP constitutes a federal program within the meaning of § 525(a) of the Bankruptcy Code in that the program is designed to provide forgivable loans to qualified businesses that are akin to grants.

51. The Debtor is a small business within the meaning of the CARES Act and is eligible to participate in funding of forgivable loans, which are functionally grants, under PPP.

52. The Debtor has, in fact, sized its PPP funding request to be forgivable and, to the extent any funds would not qualify for forgiveness, intends to immediately repay (and there is no prepayment penalty under PPP).

53. The e-mail attached hereto as **Exhibit B** and **Exhibit D**, the bankruptcy-related question on the Application, and the April 24 Rule demonstrate that SBA has violated § 525(a) of

the Bankruptcy Code with respect to the Debtor.

54. SBA has violated § 525(a) of the Bankruptcy Code for the reasons stated in this Complaint.

## COUNT IV

### (Mandamus – 28 U.S.C. § 1361)

55. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

56. The Administrator has a duty to implement the laws enacted by Congress. This non-discretionary duty includes implementing PPP in a manner that does not violate § 525(a) of the Bankruptcy Code.

57. The Administrator breached this duty.

58. The Debtor has the right to have an application for funds pursuant to PPP considered without discrimination based on the Debtor's status as a bankruptcy debtor.

59. The Administrator has no discretion to discriminate against the Debtor based on its status as a debtor in bankruptcy.

60. Upon information and belief, there are no administrative remedies available to the Debtor at this time. The Debtor has based this belief upon communications with First National Bank in which the Debtor requested that a waiver of the SBA requirements be sought and subsequent communication from First National Bank that it is not currently able to process the Application due to the Debtor's status as a debtor. The Debtor further bases this belief on the allegation of Penobscot Valley Hospital in a complaint filed earlier today (AP-20-1005) that it has a similar belief and that such belief is based on communications between Congressional staff and SBA.

**RELIEF REQUESTED**

With respect to **Count I**, the Debtor seeks the following relief:

(A)   A preliminary injunction enjoining SBA or any commercial lender from denying an application under PPP on the basis that the applicant is a debtor in bankruptcy or because of the words "or presently in bankruptcy" on the Administrator's PPP application. The Debtor requests that this relief be granted under such time as a final judgment is entered on its claims in Count II, Count III, and Count IV;

(B)   A preliminary injunction enjoining SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Application (or any amended application) until entry of final judgment on the Debtor's Claims in Count II, Count III, and Count IV; and

(C)   Permanent injunctive relief with respect to the relief in the two immediately preceding sub-paragraphs.

With respect to **Count II**, the Debtor seeks the following relief:

(A)   That the Court enter a declaratory judgment that the CARES Act does not prohibit the Application from being considered on the same terms as other qualified business that are not debtors in cases arising under the Bankruptcy Code and which are also seeking PPP funding.

With respect to **Count III**, the Debtor seeks the following relief:

(A)   A determination that SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor's Application; and

(B)   A determination that SBA has violated § 525(a) of the Bankruptcy Code by issuing its interim final rule on April 24, 2020, and promulgating a PPP application form

10

excluding debtors.

(C)　Damages in an amount not less than $1.4 million the event that the Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but none remain available.

With respect to **Count IV**, the Debtor seeks the following relief:

(A)　Entry of judgment directing the Administrator to process any application of the Debtor under PPP without discriminating against the Debtor based on its status as a debtor in bankruptcy.

(B)　Damages in an amount not less than $1.835 million the event that the Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but none remain available.

With respect to Count I, Count II, Count III, and Count IV, the Debtor requests that it be awarded attorneys' fees and costs pursuant to 28 U.S.C. 2412(b).

Date: April 27, 2020

/s/ Andrew C. Helman
Andrew C. Helman
Kelly W. McDonald
Katie M. Krakowka
Sage Friedman
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine  04104-5085
(207) 773-5651

Attorneys For Calais Regional Hospital

**VERIFICATION**

I, Rod Boula, am the chief executive officer of Calais Regional Hospital and declare under penalty of perjury under the laws of the United States of America that the allegations in paragraphs 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 30, 31, 32, and 60 of the foregoing Complaint are true and accurate, to the best of my knowledge and belief, and, if not based on my own personal knowledge, that I believe such allegations to be true and correct.

Date: April 27, 2020                              /s/ Rod Boula