# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**CALAIS REGIONAL HOSPITAL,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 19-10486** |
| **CALAIS REGIONAL HOSPITAL,**<br><br>Plaintiff,<br><br>v.<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>Defendants. | **Adversary No. 20-1006** |

### REPLY AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING DATE AND BRIEFING SCHEDULE WITH RESPECT TO THE DEBTOR'S REQUEST FOR A PRELIMNARY INJUNCTION

Calais Regional Hospital (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, files this reply and supplemental memorandum of law in support of its Emergency Motion For Temporary Restraining Order And Request For Hearing Date And Briefing Schedule With Respect To The Debtor's Request For A Preliminary Injunction, filed at Docket Entry 2 (the "Motion"),[1] and in response to the Opposition To Motion For Temporary Restraining Order, filed at Docket Entry 11 (the "Objection"), by the federal government.

---

[1]    Capitalized terms not defined herein shall have the meaning given to them in the Motion.

**REPLY AND SUPPLEMENTAL MEMORANDUM**

**I.    Overview**

1. The Motion seeks a temporary restraining order to permit the Debtor to submit a PPP application without being discriminated against on the basis of its status as a chapter 11 debtor and to ensure PPP does not run out of money before the application can be processed. The Court has not been asked to determine that the Debtor is entitled to funds under PPP or to determine that any application of the Debtor meets the relevant criteria for participation in PPP. Rather, the Debtor seeks a fair shake to participate in this important government program so that it can have the same shot at survival that other companies have, without depletion of available funds that have been spent during the time while the Debtor has been unable to access PPP due to discrimination in violation of § 525(a) of the Bankruptcy Code.

2. The Motion contains an integrated memorandum of law and is supported by the Verified Complaint filed at Docket Entry 1. A copy of the Verified Complaint is attached as **Exhibit 1**. The Debtor requests that the Verified Complaint be taken as evidence in lieu of an affidavit or declaration given that it is a sworn statement under penalty of perjury. Consistent with the representations at a hearing before the Court yesterday, the Debtor by reference Docket Entry 341 from Case No. 19-10486, in lieu of Docket Entry 339.

3. The balance of this supplemental memorandum will address two aspects of the "likelihood of success on the merits" prong—§ 525(a) and the anti-injunction provision of 15 U.S.C. § 634(b)(1)—as well as the Court's power to grant the Motion under §§ 105(a), 106(a), and 525(a) of the Bankruptcy Code.

**II.     The Likelihood Of Success On The Merits**

    **A.     Section 525(a) Prevents SBA From Denying The Debtor An Opportunity To Have Its PPP Application Considered**

4. Section 525(a) of the Bankruptcy Code prevents the government from ad hoc, unwarranted discrimination against a debtor. It is a check on the arbitrary abuse of power by the government. It protects people and companies who access their right to reorganize or obtain a fresh start through bankruptcy much the same way that other federal law prohibits the government from discriminating on the basis of race, gender, sexual orientation or any other protected class.

5. At its core, the problem that the Debtor seeks to solve is that it has been discriminated against based on its status as a debtor, which has taken the form of a denial of due process by blocking the Debtor from submitting an application for PPP funds. This is the result of the Administrator's arbitrary, unilateral, and capricious decision to bar debtors from PPP when that is not required under the CARES Act.[2]

6. This is exactly the type of problem that Congress sought to solve by enacting § 525(a). *See* 1 COLLIER PAMPHLET EDITION 2020, p. 515 (Richard Levin & Henry J. Sommer, eds., Matthew Bender). Congress enacted § 525(a) in order to codify the result in *Perez v. Campbell*, 402 U.S. 637 (1971), a case in which the Supreme Court held that a state would have frustrated the purpose of a fresh start if it were permitted to refuse to renew a driver's license due to an unpaid claim that was discharged in a bankruptcy case. The goal was to bar discrimination by governmental agencies against debtors. 1 COLLIER PAMPHLET EDITION 2020, p. 515 (Richard Levin & Henry J. Sommer, eds., Matthew Bender).

---

[2] Notably, Senator Susan Collins, who drafted PPP, has sent a letter to the Administrator stating her disagreement with the Administrator's position that hospital-debtors cannot participate in PPP. A copy of this letter is attached as **Exhibit 2**. The letter refers to a possible waiver by SBA of certain requirements. Upon information and belief, this is unavailable.

3

7. To do so, Congress enacted the following language as § 525(a):

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankruptcy or debtor has been associated, solely because such bankruptcy or debtor is or has been a debtor under this title[.]

8. While the Bankruptcy Code does not define the terms "license, permit, charter, franchise, or other similar grant[,]" courts and commentators agree that the list is illustrative and provides a starting point for the types of abusive action that is prohibited. Said another way:

> The enumerations in § 525(a) are not intended to be an exhaustive list, rather the section was drafted to permit further development of prohibited discriminatory treatment. When read as a starting point, and not as an exclusive and circumscribed list, the enumerations in § 525(a) can be viewed as examples of prohibited discriminatory treatment and not the only instances thereof.

*See, e.g., In re Stinson*, 285 B.R. 239, 246 (Bankr. W.D. VA. 2002) *(citing Collier on Bankruptcy*, ¶ 525.01). *Accord* 1 COLLIER PAMPHLET EDITION 2020, p. 515 (Richard Levin & Henry J. Sommer, eds., Matthew Bender) ("[T]he section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination."). *Accord In re Envtl. Source Corp.*, 431 B.R. 315, 322 (Bankr. D. Mass. 2010).

9. Bankruptcy courts have used § 525(a) to remedy abusive government action on many occasions and in many contexts, just as the Court should do now.[3] For example, a bankruptcy court in Connecticut held that a state mortgage financing program could not deny a mortgage to a former debtor on that basis. *In re Rose*, 23 B.R. 662 (Bankr. D. Conn. 1982). The court explained:

> If a state has chosen to enact a program of home financing for its citizens, § 525 prohibits that state from exempting debtors or bankrupts from those benefits solely because of bankruptcy and without taking into account present financial capability.

---

[3] There are, of course, a mix of decisions that hold § 525(a) inapplicable, but they did not appear applicable to the Debtor's circumstances—a denial of an opportunity to submit an application to a government program.

4

>  To hold to the contrary would frustrate the Congressional policy of granting the debtor a fresh start by denying him a means open to other citizens of acquiring a home.

*Id.* at 666-67.

10. A bankruptcy court in Massachusetts applied § 525(a) to bar discrimination by a governmental unit that had prohibited a school reorganizing in chapter 11 from receiving veterans' benefits to pay the tuition of eligible veteran students. *In re The Bible Speaks*, 69 B.R. 368, 371 (Bankr. D. Mass. 1987). After reviewing the definitions of the terms "license" and "franchise" in Black's Law Dictionary, which are broad,[4] the court reasoned as follows:

> By approving the School, the Board conferred privileges on the school analogous to a license or franchise. After approval, the School had the right to represent to veteran students that the Board had approved its unaccredited courses. The School also obtained assurance that the students' tuition for these courses would be subsidized and therefore more likely to be paid. These privileges are not indirect or tenuous. The School had to apply for them, and subjected itself to the oversight of a government agency in order to continue receiving them. We conclude, therefore, that the privileges in question here are a "similar grant" under § 525(a)

*Id.*

11. Instead of addressing authorities like these or the *Hildago* Court's decision—which is nowhere to be found in the Objection—the government argues that the Motion should be denied because PPP is a loan program and § 525(a) does not apply to loan programs. The government's concern appears to be best captured in the text of the April 24 Rule: "The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy

---

[4] According to the court:

> Black's Law Dictionary defines a "license" as "[p]ermission to do a particular thing, to exercise a certain privilege or to carry on a particular business or to pursue a certain occupation." BLACK'S LAW DICTIONARY 829 (5th ed. 1979). A "franchise" is defined as "[a] special privilege conferred by government on individual or corporation, and which does not belong to citizens of country generally of common right [sic]." *Id.* at 592.

*Id.*

5

would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

12. There are three problems with the government's argument.

13. First, nomenclature aside, as the *Hidalgo* Court's decision correctly determined, PPP is not a loan program. The entire purpose of the program is to provide grants to companies in order to ensure that workers can be paid. There are no underwriting requirements, collateral review, or loan covenants. There is no evaluation of risk because there is no expectation of repayment, provided funds are used for permitted purposes. The Debtor seeks access to a program in which the government provides a grant, nominally through a "guaranty," that the Debtor will never have to repay. All small businesses have the right to apply for PPP. The Debtor should too, without risk of discrimination.

14. Second, the Debtor has said under oath in its Verified Complaint that it only seeks funds in an amount that could be forgiven and that it would immediately return any additional funds. While the Debtor needs cash now to survive, it does not want to increase liabilities. To the extent relief under §§ 363 or 364 is needed to obtain PPP funds at a later point in time, this Court has ample authority to condition such relief on a process to implement the Debtor's stated goal, along with transparent reporting to all parties in the form of monthly operating reports and other reporting. With a debtor, there is supervision, public accountability with bank statements filed on the docket, and substantial supervisory authority that is completely absent with respect to non-debtor PPP participants. Indeed, there may even be a greater risk with non-debtor entities.

15. Third, to be clear, the Debtor does not seek an order requiring PPP funds to be distributed to it or determining that the Debtor is eligible for PPP funds. What the Debtor seeks is the right to have its application submitted without being discriminated against on the basis of its

status as a chapter 11 debtor and, in the meantime, for the status quo to be preserved by requiring the Administrator to reserve sufficient guaranty authority within PPP for the Debtor, should the Debtor otherwise be eligible under PPP.  Anything less would leave the Debtor without a remedy.

16.     The key point is that the government cannot bar a debtor from applying for a government program **solely** because of the person's status as a bankruptcy debtor.  It is an impermissible and discriminatory denial of due process with respect to an important government program that was established to keep small businesses alive during a difficult time and to ensure that the work-force continues to be paid.

17.     The Debtor already missed out on the first tranche of PPP funding, and the second tranche is expected to be depleted quickly.  *See, e.g.,* Frankel, Robin Saks, *The Paycheck Protection Program Ran Out Of Funding. What's Next For Small Business Owners?*, Forbes, (April 16, 2020) (noting that the first tranche of PPP funding ran out in 14 days), *available at* https://www.forbes.com/sites/advisor/2020/04/16/the-paycheck-protection-program-ran-out-of-funding-whats-next-for-small-business-owners/#1b5be58c7440 (last visited April 29, 2020); Gandel, Stephen, *Round 2 Of Paycheck Protection Program Starts. Better Hurry*, CBS News (April 20, 2020), *available at* https://www.cbsnews.com/news/paycheck-protection-program-small-business-lending-round-2/ (last visited April 29, 2020).  The need for this funding is clear from the record before the Court and matters of public record.

18.     The Debtor is likely to succeed on the merits of its claims, including its claim for mandamus relief under 28 U.S.C. § 1361, and each of the factors for a temporary restraining order are satisfied here.

19.     For all of these reasons, the Court can and should determine that the Debtor is likely to succeed on the merits of its claims and grant the Motion, including enjoining the Administrator

and all those acting in concert with her from dissipating available PPP funds without ensuring sufficient funding remains available in the event that the Debtor's application is approved.

### B. Section 634(b)(1)'s Anti-Injunction Provision Does Not Bar Relief

20. The Administrator has argued that § 634(b)(1) prevents bankruptcy courts from enjoining her from discriminating against a debtor. Importantly, § 525(a) bars discriminatory conduct—and the Administrator's position would leave this Court powerless to fashion relief when the government arbitrarily, capriciously, and unlawfully discriminates against a person the basis of that person's status as a debtor.

21. The Administrator's position is also the wrong way to read § 634(b)(1)—both based on its plain text and when harmonized with the Bankruptcy Code. Section § 634(b)(1) says:

> In the performance of, and with respect to, the functions, powers, and duties vested in [her] by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or [her] property[.]

15 U.S.C. § 634(b)(1).

22. There are four reasons why this statute does not prevent the Court from granting the Motion.

23. First, § 634(b)(1) was enacted in 1953, and subsequently amended in 1958, P.L. 85-536, § 5, long before the *Perez* decision or enactment of §§ 105, 106, and 525 of the Bankruptcy Code. At that time, injunctive relief was generally not available against the federal government, but § 634(b)(1) was not intended to grant SBA any greater immunity from injunctive relief than any other agency. *Cavalier Clothes, Inc., v. U.S.*, 810 F.2d 1108, 1112 (Fed. Cir. 1987) (reversing and remanding order denying injunctive relief for claims involving SBA). Much like the task

8

before the Court now, the *Cavalier Clothes* Court had to harmonize § 643(b)(1) with a later-enacted statute that specifically authorized injunctive relief against the government—but did not name SBA. In doing so, the *Cavalier Clothes* Court reasoned as follows:

> That recent expression of Congress' purpose necessarily gives a new focus to the bare words of § 634(b)(1) with respect to such contract claims.
>
> In that connection, nothing either in the language or the legislative history of § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies. At the time § 634 was originally adopted as part of the Small Business Act, injunctive relief was not available against the United States or Government entities acting in their governmental capacity; because the SBA was expressly made suable by the Small Business Act, Congress added the no-injunction provision to make sure that the "suable" clause did not permit specific relief against SBA, any more than the Tucker or Tort Claims Acts, though they allow suits for monetary relief, permit specific relief against the United States. Consequently, there is no basis for any inference that Congress intended to exclude the SBA when it later authorized injunctive relief against government agencies and departments generally on pre-award contract claims.

*Id.* at 1112. *See also Related Indus., Inc. v. U.S.*, 2 Cl. Ct. 517, 522 (1983) (providing extensive discussion of § 643(b)(1) and its origin and ultimately determining injunctive relief was available against SBA under a later statute, even though the later statute did not specifically name SBA).

24. The Federal Circuit and Claims Court are not alone in holding that § 634(b)(1) does not bar injunctive relief against SBA. The First Circuit engaged in a similar deep analysis of § 634(b)(1) and ultimately reached the same conclusion:

> The no-injunction language protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.

*Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987). *Ulstein* is binding on this Court.

25. The Court's job today is the same as in *Cavalier Clothes, Related Industries*, and

9

*Ulstein*. These decisions provide a clear path to harmonize § 634(b)(1) with §§ 105(a), 106(a), and 525(a) of the Bankruptcy Code. Section 634(b)(1) provides a general limitation on the availability of injunctive relief, whereas the later-enacted provisions of the Bankruptcy Code bar discrimination against debtors, expressly provide this Court with authority to enter any order necessary to remedy such discrimination, and waive sovereign immunity with respect to those orders. This is patently clear from §§ 105(a), 106(a)(1)-(3), and 525(a). The situation before the Court is exactly like the one addressed in *Cavalier Clothes*, *Related Industries*, and *Ulstein*—which is binding on this Court.[5] The Court should reach the same result today.

26. Second, the Administrator is not shielded from injunctive relief if she is acting outside the scope of her lawful authority. Section 634(b)(1) is limited to those circumstances in which the Administrator is acting "[i]n the performance of, and with respect to, the functions, powers, and duties vested in [her] by this chapter[.]" The Administrator has no authority to act outside the scope of her legal authority. She has no authority to engraft discriminatory provisions onto the CARES Act in violation of § 525(a) of the Bankruptcy Code. "It should be clear . . . that when the Administrator acts beyond the scope of [her] authority 15 U.S.C. § 634(b) does not preclude injunctive action." *Dubrow v. Small Bus. Admin.*, 345 F.Supp. 4, 7 (C.D. Cal. 1972) (injunctive relief available if administrator acts outside scope of authority but determining actions were not outside authority). *See also Elk Assoc. Funding Corp. v. Small Bus. Admin.*, 858 F.Supp.2d 1, 22-3 (D.D.C. 2012) ("courts [of this circuit] have strongly intimated that injunctive relief is available, at a minimum, when the SBA exceeds its statutory authority").[6]

27. Third, the text of § 634(b)(1) bars injunctive relief "against the Administrator or [her] property[.]" No more, no less. The key words are "or [her] property[.]" It is not "SBA's"

---

[5] The government has not addressed these authorities.
[6] The government has not addressed these authorities.

10

property or "agency" property or "government" property. Section § 634(b)(1) could plausibly be read to provide protection to an individual serving as administrator of the SBA and to protect that person and her personal property in her individual capacity. If there was a risk of attachment of the Administrator's bank account or injunctive relief as to the Administrator personally, then who would ever serve in that position?

28. Fourth and finally, even if § 634(b)(1) bars injunctive relief against the Administrator for official duties, §§ 105(a), 106(a), and Rule 7065 of the Federal Rules of Bankruptcy Procedure authorize the Court, to enforce § 525(a), to bind the Administrator's "agents, servants, employees, and attorneys; and . . . other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." In other words, the Court has the authority to enjoin every single person who works for or in concert with the Administrator and is helping her to implement an unlawful and discriminatory policy and practice toward the Debtor.

    **C.**    **The Court Has Power To Grant The Motion Under §§ 105, 106, and 525**

29. Lastly, the Court has the power to grant the relief requested based on §§ 105, 106, and 525 of the Bankruptcy Code.

30. Section 106(a) abrogates sovereign immunity in three important ways:

- Section 106(a)(1) of the Bankruptcy Code abrogates sovereign immunity under §§ 105, 106, and 525 of the Bankruptcy Code.

- Section 106(a)(2) authorizes the Court to "hear and determine any issue arising with respect to the application of such sections" with respect to the Administrator and SBA.

- With the sole exception of punitive damages, § 106(a)(3) authorizes the Court to issue any "order, process, or judgment" under §§ 105, 106, and 525 and the Federal Rules of Bankruptcy Procedure, including Rule 7065.

31. Section 525(a) prohibits discrimination against the Debtor on the basis of its bankruptcy filing—and § 105(a) grants the Court the authority to "issue **any order, process,** or

judgment that is **necessary or appropriate** to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). This includes authority to remedy a violation of § 525(a), consistent with § 106(a).

32. To be clear, the Debtor is asking the Court to enter an order to grant relief under §§ 105, 106, and 525 in order to fashion appropriate relief with respect to an enumerated right that the Debtor has under the Bankruptcy Code—namely, to be free from abusive discrimination from its government on the basis of its bankruptcy filing.

33. The proposed order filed by the Debtor fits squarely within the Court's authority under § 105(a) to provide a remedy for the Debtor's right to be free from governmental discrimination under § 525(a). The proposed order is also consistent with § 106(a)(4); as discussed, the anti-injunction provision is inapplicable.

### III. Reservation Of Rights

34. The Debtor is responding to the Objection on a shortened briefing schedule necessitated by the nature of the relief requested in the Motion. In light of this, the Debtor reserves the right to raise additional arguments at a hearing on the Motion and to respond to issues raised in the Objection that have not been addressed here.

### CONCLUSION

The Debtor requests that the Court enter an order (1) granting the Motion, (2) entering a temporary restraining order in a form substantially similar to the form of order filed with the Motion, and (3) granting such further relief as the Court deems proper.

| | |
|---|---|
| Date: April 30, 2020 | /s/ Andrew C. Helman |
| | Andrew C. Helman |
| | Kelly W. McDonald |
| | Katie M. Krakowka |
| | Sage Friedman |
| | MURRAY, PLUMB & MURRAY |
| | 75 Pearl Street, P.O. Box 9785 |
| | Portland, Maine  04104-5085 |
| | (207) 773-5651 |
| | |
| | Attorneys For Calais Regional Hospital |